IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARCI J. BITTNER | : | No.  08-cv-707 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SNYDER COUNTY, | : | |
| PENNSYLVANIA, and MICHAEL | : | Judge John E.Jones III |
| SHOLLEY, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

January 26, 2009

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS

Pending before this Court is a Motion to Dismiss the Plaintiff's Complaint
(the "Motion") filed by Defendants Snyder County, Pennsylvania ("Snyder
County") and District Attorney of Snyder County, Michael Sholley ("Sholley")
(collectively, "Defendants") on June 12, 2008. (Rec. Doc. 9).  For the reasons that
follow, the Motion will be granted.

## PROCEDURAL HISTORY:

Plaintiff Marci J. Bittner ("Plaintiff" or "Bittner") commenced the instant
action by lodging a civil rights Complaint against Defendants on April 16, 2008.
(Rec. Doc. 1). On June 12, 2008, the Defendants filed the instant Motion and a brief

1

in support thereof, requesting dismissal of the Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6).[1] (Rec. Docs. 9, 11).  The Plaintiff submitted her brief

in opposition to the Motion on June 28, 2008, (Rec. Doc. 13), and the Defendant

responded with a reply brief on July 10, 2008, (Rec. Doc. 17).  Since the Motion

has been fully briefed, it is now ripe for disposition.

## STANDARD OF REVIEW:

When considering a motion to dismiss under Rule 12(b)(1), a court must

distinguish between facial and factual challenges to its subject matter jurisdiction.

See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

A facial attack challenges whether the plaintiff has properly pled jurisdiction.  Id.

"In reviewing a facial attack, the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most

favorable to the plaintiff."  Gould Elecs., Inc. v. United States, 220 F.3d 169, 176

(3d Cir. 2000) (citing Mortensen, 549 F.2d at 891).  A factual attack, in contrast,

challenges jurisdiction based on facts apart from the pleadings.  Mortensen, 549

F.2d at 891.  "When a defendant attacks subject matter jurisdiction 'in fact,' . . . the

Court is free to weigh the evidence and satisfy itself whether it has power to hear

---

[1] Rule 12(b)(6) permits dismissal of a complaint that fails to state a claim upon which
relief may be granted. See Fed. R. Civ. P. 12.

the case.  In such a situation, 'no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.'"  <u>Carpet Group Int'l v. Oriental Rug Importers Ass'n</u>, 227 F.3d 62, 69 (3d Cir. 2000) (quoting <u>Mortensen</u>, 549 F.2d at 891).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1965.   A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provided not only 'fair notice,' but also the 'grounds' on which the claim rests." Phillips, 515 F.3d at 232 (citing Twombly, 127 S. Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965, 1969 n.8.  Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. at 231 (citing Twombly, 127 S. Ct. 1964-65, 1969 n.8).  Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Id. at 234.

**STATEMENT OF MATERIAL FACTS**:[2]

On March 9, 2006 a criminal complaint was filed by the District Attorney of Snyder County, Michael Sholley, against Plaintiff's ex-husband alleging that he committed crimes upon the person of Plaintiff's now-18-year-old son.  (Compl. ¶¶ 7, 9).  In June of 2006, Plaintiff was contacted by Sholley's office and informed that her testimony would be needed at the trial of her ex-husband. (Id. ¶ 10).  At that time, she informed someone in the District Attorney's Office that she required transportation to Snyder County since she had no license and could not drive due to a medical condition. (Id. ¶ 11).  Sholley requested a subpoena to Attend and Testify for Plaintiff, which was issued by Snyder County officials on April 24, 2007. (Id. ¶ 13).  Upon receiving service of the subpoena, effectuated by Patrolman Chad Thomas ("Thomas") of the Middleburg Police Department, Plaintiff informed Thomas that she required both transportation to the Snyder County Courthouse and custodial care/supervision for her two additional children, ages 6 and 7 at the time. (Id. ¶¶ 8, 15).

The trial of Plaintiff's ex-husband was scheduled for May 29-31, 2007. (Id. ¶ 12).  Around May 21, 2007, Plaintiff phoned the District Attorney's Office ("D.A.'s

---

[2] Since the resolution of the instant Motion requires us to accept as true all of the allegations in the Complaint, the following recitation of facts is taken therefrom.

Office") to remind them that she needed transportation from her residence in Spring Grove, Pennsylvania to Snyder County, a distance spanning approximately 175 miles round trip, and that she needed custodial care for her two younger children. (Id. ¶¶ 17, 20).  At that time, Plaintiff was assured by someone in the D.A.'s Office that transportation would be provided to her and care would be provided to her children. (Id. ¶¶ 19, 21).  After her communication with the D.A.'s Office, Plaintiff was under the assumption that transportation and custodial care for her children were conditions of the subpoena and were being provided in exchange for her testimony. (See id. ¶ 24).

Transportation was never provided to Plaintiff on the day she was supposed to testify and thus, Plaintiff failed to appear at the Snyder County Courthouse. (See id. ¶ 34).  In response to Plaintiff's failure to appear in court, Sholley applied for a bench warrant to arrest Plaintiff, which was granted on May 29, 2007. (Id. ¶¶ 24, 25).  On May 30, 2007, Plaintiff was arrested at her home by Patrolman Thomas, who was allegedly acting as an agent of the D.A.'s Office. (Id. ¶ 26).  Thomas handcuffed Plaintiff pursuant to police "procedures," even though she avers that she posed no threat to him, placed her in the back of a police cruiser, and transported her 87 miles to the Snyder County Courthouse. (Id. ¶ 29).  On that day, Plaintiff avers that it was 87 degrees Farenheit, yet Thomas never rolled down the back

windows of the cruiser, even though the glass partition between the front and back seats prevented air conditioned air from reaching her. (Id. ¶ 29, 30).

Upon arrival at the courthouse, Plaintiff was unhandcuffed and interviewed by Sholley. (Id. ¶ 33, 34).  It was at this time that Plaintiff informed Sholley that someone in his office told her that transportation to the courthouse would be provided to her. (Id. ¶ 34). Plaintiff further averred that her failure to appear resulted from his office not providing said transportation. (Id.).  Soon after his conversation with Plaintiff, Sholley withdrew the bench warrant. (Id. ¶ 35).  Plaintiff assured Sholley that she would appear for court proceedings in the future.[3] (Id. ¶ 36). Plaintiff was later informed that she would not be returned to her home in Spring Grove, but that she was going to be "dropped off" at a relative's house 20 miles from the Snyder County Courthouse, (id. ¶ 40), and 67 miles away from her home, (id. ¶¶ 41, 42).  Plaintiff's husband was forced that drive that distance in order to take his wife  home. (Id. ¶ 43).

These events precipitated the filing of the instant action, in which Plaintiff lodges claims against both Snyder County and D.A. Sholley.  The Complaint, inter alia, asserts that Snyder County, through the actions of Sholley, deprived Plaintiff

---

[3] As it transpired, Plaintiff never actually had to testify against her ex-husband. (Compl. ¶ 44).

of her Fourth, Fifth, and Fourteenth Amendment rights in violation of 42 U.S.C. § 1983.[4]  A fair reading of the Complaint leads us to the conclusion that Plaintiff also asserts the constitutional claims of invasion of privacy, defamation, and deprivation of Plaintiff's right to freedom of association. (See id. ¶ 69, 70).  The Complaint also appears to contain various Pennsylvania state law claims.  We will address these claims *seriatum*.

## DISCUSSION:

Initially, we note that Plaintiff appears to have abandoned her state claims. Despite alleging violations of the Pennsylvania law in her Complaint, Plaintiff states in her opposition brief that "the Complaint does not allege state claims." (Rec. Doc. 13 p. 15).  We consider this to constitute a voluntary dismissal of these claims.[5]  We will therefore grant the instant Motion to the extent the Complaint

---

[4] 42 U.S.C. § 1983 states, in pertinent part "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

[5] Indeed, we would dismiss these claims even if Plaintiff had not voluntarily done so.  42 U.S.C. § 1983 states, in relevant part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities *secured by the Constitution and laws*, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added).  Quite clearly, § 1983 only creates a cause of action for violations of *federal* law.  Therefore, Plaintiff's § 1983 claims sounding in violations of Pennsylvania law are not cognizable and would have been dismissed regardless of Plaintiff's acquiescence in that regard.

contains claims based in state law.  Accordingly, our discussion will focus solely on the federal claims contained in the Complaint.

### A.   PLAINTIFF'S § 1983 CLAIMS AGAINST D.A. SHOLLEY[6]

Plaintiff avers that Sholley violated her federal constitutional rights, in violation of § 1983, through the following acts:

1.   Failing to meet his special duty arising from the promises to provide Plaintiff with transportation to Snyder County and with child care (Compl. ¶ 51);

2.   Denying Plaintiff transportation, compensation, travel mileage, lodging, and other matters incidental to the subpoena in violation of the Fourth, Fifth, and Fourteenth Amendments (Id. ¶¶ 50, 55, 61);

3.   Arresting Plaintiff on a bench warrant without a written certification being presented to the court for said warrant in violation of the Fourth and Fourteenth Amendments (Id. ¶ 57);

4.   Arresting Plaintiff because she was not provided transportation to the Snyder County Courthouse, in violation of the Fourteenth

---

[6] Plaintiff's brief in opposition to the instant Motion indicates that Sholley is not being sued in his individual capacity, only in his official capacity as "policymaker for Snyder County." (Br. Opp. p. 7).  Therefore, we will grant the Motion to the extent that the Complaint can be read to lodge claims against Sholley in his individual capacity.

Amendment Due Process Clause (<u>Id.</u> ¶¶ 50, 51, 55, 61, 66);

5.   Arresting Plaintiff without probable cause or a hearing and arresting her when she was not in contempt of a subpoena in violation of the Fourth Amendment (<u>Id.</u> ¶¶ 49, 52);

6.   Defaming Plaintiff as a result of her unlawful arrest in violation of her privacy and due process rights protected by the First and Fourteenth Amendments (<u>Id.</u> ¶¶ 69, 70; Br. Opp. p. 6);

7.   Depriving Plaintiff of her liberty without due process in violation of the Fourteenth Amendment (<u>Id.</u>);

8.   Subjecting Plaintiff to an excessive use of force after arrest in violation of the Fourth and Fourteenth Amendments (<u>Id.</u> ¶¶ 53, 65, 67);

9.   Denying Plaintiff freedom of association in violation of the First Amendment (<u>Id.</u> ¶ 70);

10.   Vacating a bench warrant instead of providing Plaintiff a post-arrest hearing, thereby denying Plaintiff access to the courts in violation of the Fourth and Fourteenth Amendment (<u>Id.</u> ¶¶ 58, 59);

11.   Failing to return Plaintiff to her residence following her release

from custody in violation of the Fourth and Fourteenth

Amendments (Id. 60, 64; Br. Opp. p. 12);

12.     Subjecting Plaintiff to a "state created danger," in violation of

the Due Process Clause of the Fourteenth Amendment, in failing

to return Plaintiff to her residence following her release from

custody (Id. ¶ 60).

We shall address these averments sequentially.

## 1.      PRE-ARREST CLAIMS

With regard to the allegations concerning conduct occurring prior to the

arrest, Plaintiff bases her § 1983 claim on the failure to provide transportation,

travel, mileage, lodging and other agreed upon amenities to her.  Defendants assert

that, while state procedures may afford witnesses compensation for travel or

attendance at trial, these amenities are not protected by the federal constitution and

therefore cannot support a § 1983 claim.  However, this view is incorrect.  The

Pennsylvania General Assembly has codified laws that compensate subpoenaed

witnesses in state court proceedings for, inter alia, travel, mileage, and lodging in

connection for testifying before a state governmental unit. 42 Pa.C.S. § 5903.  The

mandatory nature of the statute means that recompense for these items are the

property of the subpoenaed witnesses.  Hence, depriving a witness of this property

without due process would conceivably violate the Fourteenth Amendment.[7]

Nonetheless, Plaintiff admits that she never testified in her husband's trial and fails

to aver that she was in attendance at the trial as a potential witness.  Therefore, she

has not alleged facts that would entitle her to witness compensation,[8] meaning that

her failure to receive the alleged compensation does not violate any federal law.

Accordingly, she cannot base her § 1983 claim on this ground.  The instant Motion

will be granted to this extent.

Furthermore, we must also dismiss from this § 1983 action Plaintiff's

allegation that Sholley failed to honor a promise to provide the aforementioned

witness amenities.  As was aforestated, a violation of federal law is the *sine qua non*

of a § 1983 action.  There is no federal right to the receipt of the benefits bargained

for in connection with a promise.  Thus, this claim cannot support a § 1983 action

and must be dismissed.  The instant Motion will be granted to this extent as well.

### 2.   CLAIMS MADE IN CONNECTION WITH THE ARREST

---

[7] The Fourteenth Amendment states, in pertinent part, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend XIV.

[8] We can find no provision entitling Plaintiff to witness compensation in connection with her transport to Snyder County pursuant to the arrest warrant, regardless of whether that warrant was validly issued.

With regard to the claims emanating from the arrest itself, Plaintiff asserts that her federal rights were violated when Sholley secured a bench warrant for Plaintiff without a written certification being presented to the court for said warrant, when Plaintiff was arrested pursuant to that warrant after Snyder County had failed to provide her with transportation to the county courthouse, and when Plaintiff was arrested without probable cause.[9]

In response to these allegations, Defendants assert that Sholley possesses prosecutorial immunity in connection with these acts.  Bittner denies that such immunity is available to Sholley under the circumstances.  The Supreme Court of the United States has held that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as advocate for the State, are entitled to the protections of absolute immunity." Buckley v. Fitzsimmons, 509 U.S. 259, 260 (1993).  In other words, prosecutors are afforded immunity for acts that are "intimately associated with the judicial phases of litigation, but not . . . administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." Odd v. Malone, 538 F.3d 202, 208

---

[9] We note that there is no federal right mandating a prosecutor to present written certification to the court in seeking a bench warrant.  Thus, the Plaintiff cannot use such a contention, as aforestated, to support the instant § 1983 claim.  In lieu of dismissing that averment outright, we will construe it to support Plaintiff's assertion that her arrest was effectuated without probable cause.

(3d Cir. 2008) (internal citations and quotations omitted).  Further, this immunity is not eviscerated because of an action that was in error or was done maliciously, wilfully, or in bad faith. Ernst v. Child & Youth Servs. of Chester County, 108 F.3d 486, 502 (3d Cir. 1997).

In the instant case, Sholley secured a bench warrant from the judge presiding over the trial of Bittner's ex-husband, and then contacted Patrolman Thomas to effectuate the arrest.  We believe that the application for a bench warrant and the facilitation of arrest certainly falls within the "judicial phase" of litigation and would therefore qualify for absolute immunity.[10]  Further, Plaintiff does not contend nor is there any evidence to support an inference that Sholley was acting in bad faith when he applied for the arrest warrant.  From all accounts, it appears that Sholley honestly believed he had probable cause to arrest Plaintiff for failing to comply with the subpoena.  Sholley's failure to ascertain that his office promised Bittner transportation to and from Snyder County at most rises to negligence, which would not eradicate Sholley's absolute immunity. Accordingly, since Sholley was

---

[10] Indeed, the Supreme Court has held that prosecutors maintain absolute immunity for their participation in probable cause hearings and for seeking the issuance of search warrants from courts. Burns v. Reed, 500 U.S. 478, 487 (1991); see also Betts v. Richard, 726 F.2d 79, 81 (2d Cir. 1984) (for proposition that securing a material witness warrant is within the prosecutorial capacity of a prosecutor). Certainly, Sholley's actions in applying for the arrest warrant and facilitating the arrest can be analogized to the actions referenced in Burns.

acting in good faith within his prosecutorial capacities, he is entitled to absolute immunity in connection with the above-referenced allegations.  The instant Motion will therefore be granted to this extent.

The remainder of the Plaintiff's claims regarding conduct attendant to the arrest revolve around the manner of the arrest or the consequences produced by the arrest.[11]  Since Sholley did not physically make the arrest which occasioned the alleged injuries, in lodging these claims against D.A. Sholley the Plaintiff appears to hinge liability on the fact that Sholley was the person who sought the bench warrant that, when effectuated, resulted in the alleged constitutional violations. However, as we have already stated, Sholley sought the bench warrant pursuant to his prosecutorial duties and therefore is entitled to absolute prosecutorial immunity in connection with these claims.  Therefore, the instant Motion will be granted to the extent that the Complaint asserts claims of defamation and invasion of privacy occasioned by the arrest, deprivation of liberty in connection with the harm to her reputation produced by the arrest, deprivation of her right to freedom of association, and the use of excessive force in effectuating the arrest.

### 3.   POST-ARREST CLAIMS

---

[11] More specifically, these claims involve: defamation and invasion of privacy occasioned by the arrest, deprivation of liberty in connection with the harm to her reputation produced by the arrest, deprivation of her right to freedom of association, and the use of excessive force in effectuating the arrest.

Plaintiff asserts that following her arrest, her constitutional rights were deprived by Sholley in the following ways: (I) he vacated a bench warrant instead of providing her with a post-arrest hearing, thereby denying her access to the courts in violation of the Fourth and Fourteenth Amendment; (II) he failed to return her to her residence following her release from custody in violation of the Fourth and Fourteenth Amendments; and (III) he subjected her to a "state created danger," in violation of the Due Process Clause of the Fourteenth Amendment, in failing to return her to her residence following her release from custody.

Defendants again assert that absolute immunity shields Sholley from liability in regards to these acts.  As aforestated, absolute immunity is afforded to prosecutors only when they are engaged in the traditional roles of an advocate. Fitzsimmons, 509 U.S. at 260.  When the prosecutor is engaged in administrative matters, he or she is only afforded qualified immunity. Id.   We decline to determine whether Sholley's above-referenced acts were committed in a prosecutorial capacity or an administrative capacity because, at worst he would be afforded qualified immunity, which, as we delineate below, would shield him from the above-named claims.

Qualified immunity protects government officials performing discretionary functions so long as their conduct does not violate established constitutional rights

of which a reasonable person would have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The Plaintiff must adduce specific allegations or evidence as to the allegedly violative conduct of Sholley in order to avoid the vesting of qualified immunity. See Good v. Dauphin Soc. Servs., 891 F.2d 1087, 1092, 1096-97 (3d Cir. 1990).  Essentially, we must determine whether there was a constitutional violation and whether there was good reason for Sholley to know his actions were unconstitutional. Wilkie v. Robbins, 127 S.Ct. 2588, 2617 (2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)); see also Pearson v. Callahan, ____ S.Ct. _____, 2009 WL 128768 (2009) (modifying Saucier to the extent that courts need not first determine whether facts alleged or shown by plaintiff make out violation of constitutional right).

With regard to the vacation of the bench warrant without providing a post-arrest hearing, Defendants aptly observe that the absence of such a hearing does no violence to any federal rights, especially when, after arriving in Snyder County, Plaintiff was taken directly to Sholley's office at which time he interviewed Plaintiff, was made aware of her transportation requests, and vacated the bench warrant. (Compl. ¶¶ 32, 34, 36).  Since there is no underlying federal violation in this instance  for vacating a bench warrant in lieu of conducting a post-arrest hearing, D.A. Sholley's qualified immunity is not terminated in this regard. We will

17

grant the instant Motion to this extent.

Further, arrestees have no federally recognized right to be returned to their place of arrest or to their place of residence.  They do, however, have a right to avoid being subjected to a "state created danger."  To sufficiently posit a state created danger claim, the Plaintiff must aver that: (I) "the harm ultimately caused to the plaintiff was forseeable and fairly direct;" (II) "the state-actor acted in willful disregard for the plaintiff's safety;" (III) "there was some relationship between the state and the plaintiff;" and (IV) "the state-actor used his authority to create an opportunity for danger that otherwise would not have existed." <u>Phillips v. County go Allegheny</u>, 515 F.3d 224, 235 (3d Cir. 2008) (citing <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 281 (3d Cir. 2006)).  In the case <u>sub judice</u>, the Plaintiff has not alleged that she was harmed when she was returned to a relative's house, instead of her own residence, following her release from custody.  Further, taking Plaintiff to a relative's house certainly would not, in an of itself, display "willful disregard" for her safety, and Plaintiff has alleged nothing more than that.  Thus, Plaintiff cannot satisfy the state-created danger test.  Accordingly, since Sholley did not violate any federal right in failing to return Plaintiff to her place of residence following her release from custody and since doing so did not subject her to a state created danger, Sholley's qualified immunity in these regards is not terminated.

Therefore, we will grant the instant Motion with respect to these averments.

### B.    PLAINTIFF'S § 1983 CLAIMS AGAINST SNYDER COUNTY

A municipality is liable under § 1983 "when the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict the injury." Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978).  A municipality is not liable under § 1983 unless a "policy" is the moving force behind the constitutional violation. City of Canton v. Harris, 489 U.S. 378, 388 (1989).  In order to be held liable under § 1983 for a failure to supervise its police officers, a plaintiff must establish that such failure reflects a policy of "deliberate indifference"[12] to the constitutional rights of its citizens.  Additionally, plaintiffs ". . . must identify a failure to provide training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  Reitz v. County of

---

[12] To establish deliberate indifference, plaintiffs must demonstrate:

(1) That the municipal policymaker had contemporaneous knowledge of the offending occurrence or knowledge of a prior pattern of similar violations of constitutional rights; and

(2) A failure to take adequate measures to ensure the particular right in question or otherwise communicated a message of approval to the offending subordinate.

Garcia v. County of Bucks, Pa., 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001) (citing Montgomery v. DeSimone, 159 F.3d 120, 127 (3d Cir. 1998).

<u>Bucks</u>, 125 F.2d 139, 144 (3d Cir. 1997) (citations omitted).

Plaintiff avers that Snyder County violated her constitutional rights by perpetrating the following acts:

1. Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to providing witnesses subpoened to testify with transportation, compensation, travel mileage, lodging, and other matter incidental to the subpoena (<u>Id.</u> ¶¶ 55, 61);

2. Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to requiring that probable cause and intentional noncompliance be established before a bench warrant is requested (<u>Id.</u> ¶¶ 56, 62);

3. Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to requiring a written motion with certification be presented to the court for a bench warrant (<u>Id.</u> ¶ 57);

4. Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to requiring a post-arrest hearing (<u>Id.</u> ¶ 58, 63);

5.      Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to vacating a bench warrant instead of providing a post-arrest hearing (Id. ¶ 59);

6.      Failing to establish and follow a policy, custom, or procedure, and failing to train or supervise with regard to not returning arrested persons to the place of their arrest (Id. 60, 64; Br. Opp. p. 12);

7.      Establishing and following a policy, custom of procedure of failing to adequately train or supervise those who had responsibility to make bench warrant arrests regarding misconduct subsequent to arrest (Id. ¶ 65).

These claims must be dismissed for two reasons.  First, we note that in order to hold a municipality liable under Monell, a plaintiff must first demonstrate that a Constitutional violation has occurred. Woloszyn v. County of Lawrence, 396 F.3d 314 (3d Cir. 2005); see also DeBillis v. Kulp, 166 F. Supp. 2d 255, 275 (E.D. Pa. 2001).  Here, all of the bases for subjecting Snyder County to Monell liability have been lodged against D.A. Sholley in order to establish his liability under § 1983. As noted above, the Plaintiff cannot maintain any of her § 1983 claims against D.A.

Sholley.[13]  Therefore, these same bases are insufficient to establish a <u>Monell</u> action

against Snyder County.

Secondly, even if D.A. Sholley had been liable on Plaintiff's claims, she

would not be able to hold Snyder County liable for those same acts because she has

not sufficiently alleged a <u>Monell</u> claim.  In her Complaint, Bittner merely asserts, in

various places, that Snyder County maintained a policy, custom, or practice of

engaging in acts that deprived her of her federal rights.  She provides no further

detail as to the alleged policies, customs, or practices.  This falls well short of the

federal pleading standard contemplated by Federal Rule of Civil Procedure 8(a).[14]

Therefore, regardless of D.A. Sholley's § 1983 liability, Plaintiff's insufficient

pleading would have resulted in the dismissal of the <u>Monell</u> claims against Snyder

---

[13] At most, Patrolman Thomas was acting as Sholley's direction, or as posited by
Plaintiff, as his "agent." (Compl. ¶ 26).

[14] The Supreme Court of the Untied States has noted that the pleading standard contained
in Federal Rule of Civil Procedure 8(a) requires "more than labels and conclusion, and [that] a
formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S.Ct. at
1964.  With regard to pleading <u>Monell</u> claims, this Court has held that merely alleging that a
municipality has "engaged in a policy, custom, and practice" that violated plaintiff's federal
rights is precisely the formulaic recitation of legal elements that the Supreme Court determined
was insufficient in defeating a motion to dismiss. <u>Heilman v. T.W. Ponessa & Assocs.</u>, 2008 WL
275731 * 14 (M.D. Pa. 2008).  While Plaintiff need not plead detailed facts regarding the alleged
policy, custom, or practice, she must, in the very least, plead facts that: (I) put Defendants on
notice with regard to the basis for the alleged policy, custom, or practice; and (II) "show" that
she is entitled to relief as a result of that policy, custom, or practice. See <u>Twombly</u>, 127 S.Ct. at
1964. Plaintiff's mechanical recitation of the elements of a <u>Monell</u> claim fall well below this
standard.

County.

## **CONCLUSION**:

Based on the foregoing, the Plaintiff cannot maintain viable § 1983 claims against either D.A. Sholley or Snyder County.  For that reason we will grant the instant Motion in its entirety.  A appropriate Order will enter.